MADGE CHRISTIE et al., Individually and as Class A Stockholders, on Behalf of Themselves and All Other Class A Stockholders of Fifth Madison Corporation Similarly Situated, Plaintiffs, and FRANCES ZAUDERER, Intervenor-Plaintiff, *v.* FIFTH MADISON CORPORATION et al., Defendants.

Supreme Court, Special Term, New York County, July 10, 1962.

*Hoffman, Buchwald, Nadel, Cohen & Hoffman* for plaintiffs. *Bijur & Herts* for executrices of Purdy Estate. *Delafield, Hope, Rich, Linker & Blanc* for Frederick A. Purdy and others, defendants. *McLaughlin & Stern* (*Stephen S. Bernstein* and *James H. Powell* of counsel), for intervenor-plaintiff.

JACOB MARKOWITZ, J. These are applications for counsel fees in a stockholders' action.

The judgment entered upon the order of the Appellate Division (13 A D 2d 43; 13 A D 2d 630) expressly permits '' any '' of the parties to the action to apply for reasonable counsel fees and expenses '' in connection with the instituting and maintaining and determination of this action, or the defense of this action, or both, as this court may upon proper application made to it by any of the parties herein fix, determine and allow to be proper in the premises,''

One of the applications is made by the attorneys for the original plaintiffs, and another by the attorneys for the intervenor-plaintiff. The applications are predicated upon the claim that the plaintiffs were successful upon their first cause of action, which resulted in a judgment that 18,456 shares of Class A stock of defendant, Fifth Madison Corporation (hereinafter referred to as the " corporation "), were the property of the corporation, free from any claims on the part of the other defendants. Plaintiffs' attorneys contend that their efforts benefited the corporation to the extent of the value of the 18,456 shares.

The first cause of action alleged that plaintiffs were owners of Class A stock of the corporation. It also alleged that certain shares of A stock which had been surrendered by their holders pursuant to a plan of reorganization became the property of the corporation. This allegation was denied in the answers of the defendants. Plaintiffs further alleged that the defendants, Herbert M. Purdy and Frederick A. Purdy, who constituted a majority of the board of directors, transferred the surrendered shares to themselves, or to a company owned and controlled by them, without the receipt of any consideration by the corporation. This allegation was also denied in the defendants' answers. The cause of action was asserted by plaintiffs on behalf of the corporation. It sought a decree setting aside the alleged transfers and directing the retransfer of the shares to the corporation.

There were thus two issues presented for judicial determination in connection with the first cause of action: (1) whether the surrendered shares were the property of the corporation, and (2) whether they had been wrongfully transferred by the Purdys to themselves or to a company owned by them. The first issue was determined favorably to plaintiffs by this court (24 Misc 2d 296) and by the Appellate Division (13 A D 2d 43). The judgment, as affirmed upon appeal, declares that the 18,456 shares of Class A stock surrendered to the corporation " are the sole and exclusive property of the defendant, Fifth Madison Corporation " and that the other defendants (the Purdys and their company) " have no right, title, interest or claim whatsoever therein." The Appellate Division opinion expressly stated (13 A D 2d 43, 48) that " We have no difficulty in coming to the conclusion that with respect to the reacquired shares  *  *  * they ' belong ' solely to the corporation." On the second issue, however, plaintiffs were unsuccessful. The proof at the trial established that the surrendered shares had never left the possession of the Manufacturers Trust Company, the corporation's agent, to whom the shares had been surrendered by their holders pursuant to the plan of reorganization. There was no proof of a transfer of the surrendered shares to the Purdys or anyone else.

The applications of the attorneys for the plaintiffs for counsel fees and disbursements are opposed on various grounds which will be taken up seriatim.

One of the grounds of opposition is that plaintiffs were unsuccessful upon the first cause of action, in that they failed to establish that the surrendered Class A shares had been transferred to the Purdys or their company. This contention entirely ignores the fact that plaintiffs did succeed upon the other issue presented by the answers to the complaint and supplemental complaint, viz., the issue as to whether or not the surrendered Class A shares were the property of the corporation. The failure of plaintiffs to establish their *additional* claim that the surrendered shares had been transferred to the Purdys or their company is insufficient basis for defendants' contention that plaintiffs were not successful in connection with their first cause of action.

The issue as to the ownership of the surrendered Class A shares was not merely a formal one or incidental. On the contrary, it was a very substantial one. Indeed, it was really the main issue. Whether the shares had already been actually transferred by the Purdys to themselves or their companies was subordinate and secondary. Some months *prior* to the institution of this action, the Purdys, in a letter written by their attorneys, dated December 16, 1955, asserted the claim that the surrendered Class A stock " is validly outstanding *in the hands of Messrs. Purdy* " (italics supplied). Among the 10 reasons assigned to support this claim was the following: " In any event if new consideration were said to have been needed for delivery of the A stock to the Purdys it was furnished by them to Fifth Madison Corporation at the time of the 1953 Amended Plan, as one integrated closed transaction in the form of their causing Betby Corporation and 340 Madison Avenue Corporation to subject their properties to the mortgages and in the form of their personal guaranties as well as corporate guarantee, all of which produced for Fifth Madison Corporation the forbearance from its creditors and the new money which it needed to save its assets from foreclosure under the then past due mortgage." It was in reliance upon these statements, that the surrendered Class A shares were " in the hands of " the Purdys and belonged to them, that plaintiffs alleged in their complaint that the shares had been wrongfully transferred to the Purdys. The issue as to the proper ownership of the surrendered shares was formally created by the answers, which denied the allegation that the shares belonged to the corporation. Thereafter, during the trial, a settlement stipulation between the parties was submitted

to the court for approval. A Referee was appointed to report upon its fairness, reasonableness and adequacy. The proposed settlement agreement called for the receipt by the Purdys of one half of the previously surrendered 18,456 Class A shares. The foundation for the proposed settlement was that the Purdys claimed to be entitled to *all* the 18,456 Class A shares. The Referee disapproved the proposed settlement, as did this court. Both found that there was no colorable basis for the Purdys' claim that they were entitled to any of the surrendered Class A shares. Repeated efforts of plaintiffs' attorneys and of the court to obtain an admission from defendants that the surrendered shares were the property of the corporation were wholly unsuccessful. In the meantime, although the shares were in the physical possession of the corporate agent, Manufacturers Trust Company, they were subject to the control of the Purdys (including the legal representatives of Herbert Purdy, who died during the pendency of the action) who constituted a majority of the corporation's board of directors and controlled its voting stock. The Purdys were thus in a position, at any time they chose to do so, to direct the corporate agent to transfer and deliver the shares to them or to their nominees in satisfaction of their claim that the shares validly belonged to them.

It is clear from the foregoing that the nub of the controversy between the parties in connection with the first cause of action was whether the corporation or the Purdys owned the surrendered Class A shares, and that whether or not an actual transfer of the shares had *already* been made to the Purdys, as stated by their attorneys in the letter antedating the commencement of this action, was a secondary and minor issue. In the light of the foregoing, there is no basis for the contention of the corporation's attorney that plaintiffs were not successful upon their first cause of action. They obtained a judgment which not only declared that the corporation was the rightful owner of the surrendered shares, but which went further and declared that the Purdys had no interest or claim to the shares. This judgment effectually extinguished the claims to the shares which the Purdys had asserted before the action's commencement, and during the action as the basis for a proposed settlement. The contention that plaintiffs were not successful as to the first cause of action merely because they failed to establish that an actual transfer to the Purdys had already been made is erroneous.

The corporation's attorney also claims that the fact that the Appellate Division awarded costs to the defendants is an indication that said court was of the opinion that plaintiffs had been unsuccessful. It is to be borne in mind, however, that the appel-

late court had held in favor of defendants as to the second cause of action. The award of costs to defendants appears to have been predicated upon that fact. At any rate, the Appellate Division (13 A D 2d 630) has expressly said: '' We have not passed upon the question of whether or not any of the parties are entitled to allowances for counsel fees and expenses. A determination of that question rests with Special Term upon proper application.'' Furthermore, the judgment, as modified by the Appellate Division, expressly authorized '' *any* '' of the parties to apply for a counsel fee '' *in connection with the instituting and maintaining* '' of the action, as well as for services rendered in its defense. The contention that the award of costs to defendants establishes that plaintiffs are not entitled to counsel fees is accordingly held to be without merit.

An award of counsel fees to plaintiffs is opposed on the further ground that the corporation received no benefit from the services rendered by plaintiffs' attorneys. It is difficult to understand why a judgment holding, in effect, that the surrendered shares of stock belong to the corporation and not to the Purdys does not benefit the corporation. Though, as stated by the Appellate Division, treasury stock has no value '' *while held by the corporation* '', it could be reissued for an adequate consideration, as expressly recognized in the third decretal paragraph of the judgment, as modified by the Appellate Division. The corporation's right to receive adequate consideration for the stock is a valuable one. It would not exist if the surrendered shares belonged to the Purdys and not to the corporation. The statements in the Appellate Division opinion upon which the corporation's attorney relies were made in a wholly different connection. They related to plaintiff's *second* cause of action. Plaintiffs had claimed that the surrendered Class A shares should be retired. They based this claim, in part upon a *pro forma* capitalization table issued by defendants, in which the surrendered shares were treated as no longer outstanding. The appellate court held that this was in accordance with proper accounting procedure and did not necessarily indicate that the surrendered shares were to be retired. The remarks of the court, which form the basis of the present contention that no benefit was conferred upon the corporation by a holding that the Purdys were not entitled to the surrendered shares, related solely to the effect of the *pro forma* capitalization table upon the claim that the surrendered Class A shares were to be retired. They do not affect the question whether the corporation was benefited by a judgment that the surrendered shares, constituting treasury stock, belonged to it, rather than to the Purdys. In *Pollitz* v.

*Wabash R. R. Co.* (207 N. Y. 113) a stockholder sued to compel the return of treasury stock issued to the directors for allegedly inadequate consideration. The Court of Appeals said (pp. 124, 125): "The issue of the shares * * * affected injuriously the interests of the company and the stockholders. It destroyed the potential ability of the corporation to secure, in cash, their value through their future sale or deprived it of the moneys which the sale thereof in the market at that time would have brought." In *Beeber* v. *Empire Power Corp.* (31 N. Y. S. 2d 920) the settlement of a stockholder's action called for the delivery to the corporation of its own stock (see 31 N. Y. S. 2d 914 *et seq.*). Allowances to plaintiff's counsel were approved by the Referee (now Judge Burke of the Court of Appeals) and by the court. It is not necessary to support an award of an allowance to a plaintiff's attorney, that a fund be created, it being sufficient that a benefit was conferred upon the corporation (*Bysheim* v. *Miranda,* 45 N. Y. S. 2d 473, 475; *Holthusen* v. *Budd Mfg. Co.,* 55 F. Supp. 945). In *Mencher* v. *Sachs* (164 Atl. 2d 320 [Del.]) the Supreme Court of Delaware awarded counsel fees to a plaintiff who had successfully prosecuted a derivative suit to cancel issued shares of stock. A like holding was made in *People ex rel. Weede* v. *Bechtel* (244 Iowa 785) where the plaintiffs had obtained a decree directing issued shares to be returned to the treasury of the corporation. The court declared (pp. 824, 825) that "Treasury stock, as distinguished from unissued stock, is corporate stock which had been subscribed and paid for * * *. It becomes personal property of the company and part of its assets, and it may be sold for cash or credit, for par or for market value * * *. The benefit to the company was a direct and definite one. It was a return to it of property that had been wrongfully taken from it. * * * The title and ownership of its property was in the corporation and not in its stockholders. The benefits were primarily and directly to the corporation."

We turn now to the question as to the amounts of the allowances to be granted for the services of plaintiffs' attorneys. This in turn depends upon the value of the benefit conferred upon the corporation by the adjudication that it is entitled to the 18,456 shares, free of any claim by the Purdys or the other defendants. The data as to the value of the shares submitted by plaintiffs' attorneys are based upon corporate balance sheets and reflect, at most, the book value of the shares. The Appellate Division has, however, held that the shares, "while held by the corporation", have no value because they would not be entitled to participation in the corporate assets if the corporation were

liquidated. The Appellate Division added (13 A D 2d 43, 51): "It is only what is received in consideration of its reissuance that is considered an asset of the corporation." The benefit conferred upon the corporation by extinguishing the Purdy's claims to the shares is, therefore, the amount which the corporation could reasonably obtain for the shares if it should choose to reissue and sell them. This amount is not necessarily the same as the book value of the shares. A determination of this value does not require that there be an actual reissue and sale of the shares by the corporation, something which seems improbable at this time. The record before the court contains insufficient evidence to enable it to determine the amount which the corporation could reasonably obtain if it sold the shares. In the circumstances, the court will take proof as to that issue on September 17, 1962. The fixation of the allowances to the attorneys for the plaintiffs will accordingly be held in abeyance.

The remaining application for counsel fees is made by a firm which represented the executrices of Herbert M. Purdy, who died during the pendency of this action. The section permitting an award of counsel fees to a defendant (General Corporation Law, § 64) is limited, by its terms, to one who is made a defendant by reason of the fact that he or his intestate "was a director, officer or employee" of the corporation. Such a person is entitled to an allowance if the court finds that he, or his intestate, "was successful in whole or in part" (General Corporation Law, § 67) except as to matters "as to which it shall be adjudged * * * that such officer, director or employee is liable for negligence or misconduct in the performance of his duties" (§ 64).

The only part of the first cause of action as to which the defendants represented by the applicant were successful was the issue as to the alleged transfer of the Class A shares by the Purdys to themselves or their company. The Purdys were charged with having directed the transfer as directors of the corporation in breach of their fiduciary obligations. The applicant is, therefore, entitled to an allowance for such services as were rendered in defeating plaintiffs' claim that the surrendered Class A shares had been transferred by the Purdys. The shares had never left the possession of the corporate exchange agent. All that defendants' attorneys had to do was sit back and wait for plaintiffs to prove that the stock had been transferred, which defendants knew was impossible for plaintiffs to establish.

No allowance may be granted to the applicant for the services rendered in defeating the second cause of action, for that cause was directed only at the defendant corporation. The legal repre-

sentatives of Herbert M. Purdy were not made parties to that cause by reason of being directors, officers or employees of the corporation. The relief asked for as to the second cause was only that the *corporation* cancel and retire the surrendered Class A shares.

The application of counsel for the executrices of Herbert M. Purdy is granted to the extent of directing a hearing on the amount to be allowed, which hearing is set for September 17, 1962.